IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

DUANE K. AUWAE,                  ) CIVIL NO.  06-00371 HG-KSC
                                 )
                Plaintiff,       ) FINDINGS AND
                                 ) RECOMMENDATION TO AFFIRM
        vs.                      ) THE DECISION OF THE
                                 ) ADMINISTRATIVE LAW JUDGE
JO ANNE B. BARNHART,             )
Commissioner of Social           )
Security,                        )
                                 )
                Defendant.       )
_____  )


FINDINGS AND RECOMMENDATION TO AFFIRM
THE DECISION OF THE ADMINISTRATIVE LAW JUDGE

On July 6, 2006, Plaintiff Duane K. Auwae

("Plaintiff") filed this action against Defendant Jo

Anne B. Barnhart, Commissioner of the Social Security

Administration ("Defendant").  Plaintiff appeals the

Administrative Law Judge's ("ALJ") decision denying

Plaintiff Supplemental Security Income ("SSI") and

Disability Insurance Benefits ("DIB") under Titles II

and XVI of the Social Security Act.  Plaintiff seeks a

judgment reversing the ALJ's decision and remanding the

case with the instructions to award disability benefits

to Plaintiff from January 1, 2001, the onset date of

his disability, and payment of disability benefits

consistent therewith.

On July 10, 2006, this matter was designated to this Court by Chief United States District Judge Helen Gillmor pursuant to 28 U.S.C. § 636(b)(1)(B) and § 636(b)(3). Pursuant to Local Rule 7.2(d) of the Local Rules for the United States District Court for the District of Hawaii ("Local Rules"), the Court finds this matter suitable for disposition without a hearing.

The Court, having carefully considered the written submissions and the record herein, FINDS and RECOMMENDS that the ALJ's decision be AFFIRMED.

<u>BACKGROUND</u>

Plaintiff was born on November 29, 1953 and has a high school diploma and A.A.S. degree in electrical installation and technology. Administrative Record dated September 26, 2006 ("AR") at 58, 103. From 1985 to 1989 he worked as a security guard, and from 1989 to 1997 he worked as a landscape foreman. AR at 58, 106, 419-20.

Plaintiff alleges that he became disabled on January 1, 2001, when he began experiencing a significant amount of lower back pain. AR at 58, 104,

2

390.   On January 10, 2002, Plaintiff's primary care physician, John Martell, M.D., referred him to Big Island Therapy Care. AR at 248.  In a report dated January 23, 2002, physical therapist Lisa D'Oria, RPT, indicated that Plaintiff's signs and symptoms were consistent with a diagnosis of low back pain, and noted that increased pain limited Plaintiff's strength and range of motion, impairing function. AR at 246.

On March 22, 2002, Plaintiff met with Dr. Greg Ruhland, M.D., who noted that Plaintiff described his pain as "radiating out of his low back to his right buttock down his right leg into the medial aspect of his right thigh and calf." AR at 195.  Dr. Ruhland noted that Plaintiff had taken Flexeril, Oxycontin, and other medications without significant improvement, so he recommended an interventional pain management injection of the L4 nerve root and scheduled an MRI scan. AR at 196.  On April 26, 2002, Plaintiff had an MRI. AR at 219.  The radiologist noted that the results of the MRI indicated "[m]ultilevel degenerative disc disease...most prominent at the L4-5 and L5-S1 levels." Id.

3

On May 22, 2002, Dr. Ruhland met with Plaintiff to follow up on his progress after the April 15, 2002, epidural injection. AR at 192.  Dr. Ruhland reported that Plaintiff "has normal sensation to light touch and cold temperature in the L3, L4, L5, and S1 dermatomes bilaterally." Id.  He also noted that there was significant improvement in Plaintiff's radicular pain, but no such improvement in his low back where he was still in "quite severe pain." Id.

On September 12, 2003, after numerous additional treatments and visits, Dr. Ruhland indicated that Plaintiff's low back pain is "of unknown etiology." AR at 165.  On October 7, 2003, Laura Lafevers, APRN, who worked with Dr. Ruhland, noted that due to Plaintiff's severe degenerative disc disease at multiple levels, he has "significant lower back pain" that "is constant and significantly limits his ability to walk, stand or sit for any prolong period of time." AR at 164.

On August 26, 2003, and November 11, 2003, physicians serving as state agency medical consultants ("State Agency physicians") completed two Physical

4

Residual Functional Capacity Assessments. AR at 19.
They each opined that Plaintiff could perform light
work, with restrictions limiting climbing, balancing,
stooping, kneeling, crouching, and crawling to only
occasional basis, and precluding the use of ropes,
ladders, and scaffolds. AR at 19, 153-60, 233-40.  Both
physicians indicated that Plaintiff's allegations
regarding his level of pain were not supported by the
evidence in his file and were not fully credible. AR at
19.

From June 2002 to May 2003, Plaintiff also had
six physical evaluations by Bruce S. Katsura, M.D. for
the purpose of establishing disability for state
welfare benefits. AR at 249-60.  On five of the six
reports, Dr. Katsura indicated that Plaintiff could
lift or carry 10 pounds frequently, stand or walk for
2-4 hours during an 8 hour workday with breaks every
two hours, and sit continuously for 6 hours during an 8
hour workday with breaks every 2 hours. Id.

On June 3, 2003, Plaintiff filed an application
for DIB and SSI benefits alleging that he was disabled
and unable to work as of January 1, 2001. AR at 104-07,

5

319-22.  On August 29, 2003, the Social Security
Administration ("SSA") denied Plaintiff's application
for DIB and SSI benefits. AR at 26-29, 327.  On
September 12, 2003, Plaintiff filed a request for
reconsideration of SSA's determination. AR at 30-31.
On October 28, 2003, Plaintiff completed a Daily
Activities Questionnaire and noted that his pain
inhibited his ability to sleep through the night and
also prevented him from working because he could not
sit or stand for long periods of time, but that he was
able to cook for himself, shop for food once a month,
sweep the house, and do his laundry twice month. AR
at 131-33.  On November 13, 2003, Plaintiff's request
for reconsideration was denied. AR at 32-34.

On December 11, 2003, Plaintiff requested a
hearing before an ALJ. AR at 37-38.  On January 7,
2004, and February 10, 2004, Plaintiff met with Dr.
Ruhland who noted that Plaintiff was staying quite
active by caring for his granddaughter and by walking
approximately 1/4 to ½ a mile on a regular basis. AR at
77, 79.  Plaintiff met with Dr. Ruhland again on March
9, 2004, and April 6, 2004. AR at 73, 75.  During these

6

visits, Dr. Ruhland noted that Plaintiff continued to stay active by caring for his granddaughter but had increased pain with walking and doing minimal activity. Id.

On June 9, 2004, a hearing was held before ALJ Henry M. Tai. AR at 384-403.  On June 25, 2004, the ALJ concluded that Plaintiff "is not disabled within the meaning of the Social Security Act." AR at 54-63.  On July 19, 2004, Plaintiff sought review of the ALJ's decision by the Appeals Council. AR at 64-85.

On September 24, 2004, the Appeals Council issued a decision vacating the ALJ's initial decision and remanded the case with instructions to further evaluate Plaintiff's claim.[1] AR at 86-89.  On March 23,

---

[1]  The Appeals Council instructed the ALJ to do the following upon remand: (1) Further evaluate the nature and severity of all the claimant's impairments including his obesity under the sequential evaluation process; (2) Give further consideration to the claimant's maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations; (3) Evaluate the claimant's subjective complaints and provide rationale in accordance with the disability regulations pertaining to evaluation of symptoms (20 C.F.R 404.1529 and 416.929) and pertinent circuit case law and Social

2005, another hearing was held before the ALJ. AR at 404-423.  Plaintiff, his attorney, and a vocational expert ("VE") appeared at the second hearing. AR at 404.

On April 28, 2005, the ALJ issued another decision, again concluding that Plaintiff is not disabled within the meaning of the Social Security Act. AR at 14-23.  In particular, the ALJ found that: (1) Plaintiff is insured for benefits through December 31, 2001; (2) Plaintiff has not engaged in substantial gainful activity since the alleged onset of disability; (3) Plaintiff's chronic lumbosacral pain with no current radicular pain to his legs, and multi-level degenerative lumbar disc disease with recent MRI showing facet hypertrophy and ligamentum flavum is a "severe" impairment, based upon the requirements in the Regulations; (4) this medically determinable impairment does not meet or medically equal one of the listed impairments in Appendix I, Subpart P, Regulation No. 4;

---

Security Ruling 96-7p; (4) If needed, obtain evidence from a medical expert to clarify the nature and severity of the claimant's impairments.

(5) Plaintiff's allegations regarding his limitations
are not totally credible; (6) Plaintiff has the
following residual functional capacity: perform light
work, with restrictions limited to climbing, balancing,
stopping, kneeling, crouching, and crawling to only
occasional basis, and precluding the use of ladders,
ropes, and scaffolds; (7) Plaintiff's past relevant
work as a landscape foreman did not require the
performance of work-related activities precluded by his
residual function capacity; (8) Plaintiff's medically
determinable impairment does not prevent the him from
performing his past relevant work; and (9) Plaintiff
was not under a "disability" as defined in the Social
Security Act, at any time through the date of the
decision.

On July 6, 2005, Plaintiff sought review by the
Appeals Council. AR at 10.  On May 5, 2006, the Appeals
Council denied Plaintiff's request for review. AR at 6-
8.  Pursuant to 42 U.S.C. § 405(g), this became the
final decision for the purposes of judicial review.  On
July 6, 2006, Plaintiff filed an action in this Court
challenging the ALJ's decision.

## STANDARD OF REVIEW

The decision of the Commissioner must be affirmed if it is supported by substantial evidence and the Commissioner applied the correct legal standards. Benton v. Barnhart, 331 F.3d 1030, 1035 (9th Cir. 2003). Substantial evidence is relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). To determine whether there is substantial evidence to support the ALJ's decision, the court should review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997). Where evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld. Id.

## DISCUSSION

Plaintiff alleges that he is entitled to DIB or SSI under Titles II or XVI of the Social Security Act. In order to be found disabled and qualify for DIB or SSI, Plaintiff must show that he is unable to "engage

10

in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  In addition, "[a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy..." 42 U.S.C. § 423(d)(2)(A).  Since Plaintiff was only insured for disability benefits through December 31, 2001, he must establish that he was disabled on or prior to that date. AR at 15, 17.

In evaluating whether Plaintiff was disabled, the ALJ uses a five-step process. See 20 C.F.R. 404.1520 (2007).[2]  "The claimant carries the initial

---

[2]  "In step one, the ALJ determines whether a claimant is currently engaged substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the

11

burden of proving a disability in steps one through four of the analysis." <u>Burch</u>, 400 F.3d at 679 (citation omitted).  If a claimant is able to establish an inability to continue his or her past relevant work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work. <u>Id</u>.

Here, there is no dispute that Plaintiff has met his burden with regard to steps one and two. Plaintiff has not engaged in any substantial gainful activity since the alleged onset date of his disability and he suffers from chronic lumbosacral pain and multi-

─────────────────

claimant has a medically severe impairment or combination of impairments.  If not, the claimant is not disabled.  If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. Pt. 404, subpt. P, App.1.  If so, the claimant is automatically presumed disabled.  If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing her past relevant work.  If so, the claimant is not disabled.  If not, the ALJ proceeds to step five and examines whether the claimant has the residual functional capacity to perform any other substantial gainful activity in the national economy.  If so, the claimant is not disabled." <u>Burch</u>, 400 F.3d at 679; <u>see</u> <u>also</u> 20 C.F.R. § 404.1520.

level degenerative disc disease, which the ALJ
determined is severe within the meaning of the Social
Security Act. AR at 22; Plaintiff's Opening Brief at 9-
10; see also 20 C.F.R. §§ 404.1520 and 416.920.  At
issue are the ALJ's analysis and determinations at
steps three, four, and five.

Plaintiff argues that the ALJ erred in
analyzing steps three, four and five by (1) failing to
develop the record to determine if the Plaintiff met or
equaled Listing 12.07 Somatoform Disorders under the
Social Security Act; (2) discrediting Plaintiff's
testimony regarding excess pain; (3) discounting the
treating physician's opinion regarding Plaintiff's
residual functional capacity; and (4) failing to
consider the actual requirements of Plaintiff's prior
work. Plaintiff's Opening Brief at 7-8.  The Court will
address each of Plaintiff's arguments in turn.

A.   The ALJ Did Not Err in Determining that
     Plaintiff Did Not Meet Listing 12.07 Somatoform
     Disorder.

Under Listing 12.07,[3] Somatoform Disorders are

_____

     [3]  The Listing of Impairments in 20 C.F.R. Pt. 404,
Subpt. P, App. 1, describes specific impairments of

categorized as "[p]hysical symptoms for which there is
no demonstratable organic findings or known
physiological mechanisms." 20 C.F.R. Pt. 404, Subpt. P,
App. 1, § 12.07.  The two requirements set forth in
sections "A" and "B" must both be satisfied in order to
meet the Listing for Somatoform Disorder,[4] and Plaintiff

_____

each of the major body systems which are considered "to
be severe enough to prevent a person from doing any
gainful activity." See 20 C.F.R. §§ 404.1525(a) and
416.925(a).  If a claimant's impairment meets or equals
one of the listed impairments, he or she will be found
disabled. See 20 C.F.R. §§ 404.1520(d) and 416.920(d).

    [4]  A. Medically documented by evidence of one of the
following:
        1. A history of multiple physical symptoms
of several years duration, beginning before age 30,
that have caused the individual to take medicine
frequently, see a physician often and alter life
patterns significantly; or
        2. Persistent nonorganic disturbance of
one of the following:
            a. Vision; or
            b. Speech; or
            c. Hearing; or
            d. Use of a limb; or
            e. Movement and its control (e.g.,
coordination disturbance, psychogenic seizures,
akinesia, dyskinesia; or
            f. Sensation (e.g., diminished or
heightened).
        3. Unrealistic interpretation of physical
signs or sensations associated with the preoccupation
or belief that one has a serious disease or injury; AND
        B. Resulting in at least two of the following:

14

has the burden of proving that his impairment satisfies those requirements. See Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999). The ALJ is only required to review the symptoms and make specific findings essential to the conclusion that Plaintiff's impairments did not meet or equal the Listing of Impairments. See Gonzalez v. Sullivan, 914 F.2d 1197, 1200-01 (9th Cir. 1990). If the ALJ is confronted with ambiguous evidence or determines that the record is inadequate, the ALJ has a duty to further develop the record. See Tonapetvan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001). "The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation

---

        1. Marked restriction of activities of daily living; or
        2. Marked difficulties in maintaining social functioning; or
        3. Marked difficulties in maintaining concentration, persistence, or pace; or
        4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.07.

of the record." Id. (citing Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir.1998)).

Here, Plaintiff alleges he meets §§ 12.07 (A)(2)(f) and 12.07(B)(1) and (B)(2) of the Listing.  Plaintiff's Opening Brief at 11.  Section 12.07(A)(2)(f) requires "*persistent* nonorganic disturbance of...sensation (e.g., diminished or heightened). 20 C.F.R. Pt. 404, Subpt. P., App. 1,§ 12.07 (emphasis added).  Plaintiff asserts that his pain level is severe and that his sensations are both heightened and diminished due to the pain caused by unknown etiology.  Plaintiff's Opening Brief at 12.

Significantly, the ALJ noted that since the medical records do not show that Plaintiff sought any significant treatment for his back pain prior to 2002, there appeared to be insufficient evidence to determine the extent of Plaintiff's impairment prior to December 31, 2001. AR at 17.  Nevertheless, in making his determination, the ALJ afforded weight to Dr. Ruhland's findings from 2002 to the present, the medical evidence, and the opinions of the State Agency physicians, among other factors.  For example, on May

16

22, 2002, Dr. Ruhland noted that Plaintiff had normal sensation to light and touch and cold temperatures. AR at 16.  On June 18, 2003, Dr. Ruhland again noted that Plaintiff's sensory exam was normal. Id.  In addition, the ALJ noted that the laboratory findings failed to demonstrate the existence of an impairment that could produce Plaintiff's alleged debilitating symptoms. AR at 18.  Finally, both State Agency physicians found there was insufficient evidence to support a finding of disability and found Plaintiff not to be fully credible. AR at 19.  Accordingly, based on the specific findings of Dr. Ruhland regarding Plaintiff's sensations and the record as a whole, the Court finds that the ALJ reasonably concluded that Plaintiff failed to meet his burden of showing a *persistent* diminished sensation occurring on or before December 31, 2001.

Next, Plaintiff alleges he meets §§ 12.07 B(1) and B(2).  Section 12.07 B(1) requires: "[m]arked restriction of activities of daily living."[5]  Section

---

[5] "Marked" means more than moderate but less than extreme. It describes a degree of limitation that interferes "seriously with your ability to function independently, appropriately, effectively, and on a

17

12.07(B)(2) requires "[m]arked difficulties in maintaining social functioning."  Social functioning "refers to your capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(1).  Plaintiff argues that he experiences pain that substantially affects his daily life and causes marked difficulties in maintaining his social functioning. Plaintiff's Opening Brief at 11-13. Defendant argues that Plaintiff has not provided any evidence that he has marked restrictions of daily activities or social functioning. Defendant's Answering Brief at 7.

The Court finds that there is substantial evidence in the record to support the ALJ's finding that Plaintiff continued to engage in daily life activities and maintained a level of social functioning.  For example, the ALJ noted that Dr. Ruhland indicated in several of his reports that Plaintiff had been able to stay active by taking short

_____

sustained basis." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00 (C)(1).

walks and caring for his granddaughter.[6] AR at 21.  In
addition, the ALJ found that Plaintiff needed no
assistance in taking care of his personal hygiene and
grooming, and cooks, sweeps, and does laundry. AR at
21.  Finally, Plaintiff indicated in his Daily
Activities Questionnaire that he was able to cook for
himself, shop for food once a month, sweep the house,
and do his laundry twice a month. AR at 131-33.  Based
on the record, the Court finds that the ALJ reasonably
concluded that Plaintiff failed to meet his burden
under §§ 12.07 B(1) and (B)(2).

        Contrary to Plaintiff's assertion, the Court

---

        [6]  On April 6, 2004, Dr. Ruhland noted that
Plaintiff "is staying somewhat active at home. He is
caring for his granddaughter." AR at 73. On March 9,
2004, Dr. Ruhland noted that Plaintiff "does continue
to stay active." AR at 75. On February 10, 2004, Dr.
Ruhland noted that Plaintiff "is able to walk
approximately a fourth of a mile without too much
difficulty." AR at 77. On January 7, 2004, Dr. Ruhland
noted that Plaintiff "stays quite active" and "walks
1/4 to ½ mile on a regular basis." AR at 79. On August
15, 2003, Dr. Ruhland indicated that Plaintiff "visits
his four month old granddaughter on a regular basis and
maintains his activities of daily living." AR at 166.
On July 18, 2003, Dr. Ruhland noted that Plaintiff "is
able to care for himself and provide his own activities
of daily living." AR at 168.

finds that because the ALJ was not confronted with ambiguous evidence and did not determine that the record was inadequate, the ALJ did not have a duty to further develop the record in this case. <u>See</u> <u>Tonapetvan v. Halter</u>, 242 F.3d 1144, 1150 (9th Cir. 2001). Accordingly, the Court finds that the ALJ's determination that Plaintiff did not meet the requirements of Listing 12.07 on or before December 31, 2001, was supported by substantial evidence and free of legal error.

B.   <u>The ALJ Did Not Err in Discrediting Plaintiff's Testimony Regarding Excess Pain.</u>

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." <u>Andrews v. Shalala</u>, 53 F.3d 676, 679 (9th Cir. 2005).  The ALJ's findings are entitled to deference if they are properly supported by the record and claimant's testimony was not arbitrarily discredited. <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 345-46 (9th Cir. 1991).  The ALJ should consider various

factors[7] in assessing the credibility of the claimant's
testimony regarding excess pain in addition to the
objective medical evidence.  The ALJ may also use
ordinary techniques of credibility evaluation to test a
claimant's credibility, and as long as the ALJ makes
specific findings that are supported by the record, the
ALJ may discredit the claimant's allegations based on
inconsistencies in the testimony or on relevant
character evidence. Bunnell, 947 F.2d at 346.

        "In deciding whether to accept a claimant's
subjective symptom testimony, an ALJ must perform two
stages of analysis: the Cotton analysis and an analysis
of the credibility of the claimant's testimony
regarding the severity of her symptoms." Smolen v.
Chater, 80 F.3d 1273, 1281 (9th Cir. 1996)(citing
Cotton v. Bowen, 799 F.2d 1403 (9th Cir.1986)).  Under

---

        [7]  The ALJ should consider factors such as: "(1)
the nature, location, onset, duration, frequency,
radiation, and intensity of any pain; (2) precipitating
and aggravating factors (e.g., movement, activity,
environmental conditions); (3) type, dosage,
effectiveness, and adverse side-effects of any pain
medication; (4) treatment, other than medication, for
relief of pain; (5) functional restrictions; and (6)
the claimant's daily activities." Bunnel, 947 F.2d at
346 (citing SSR 88-13).

the Cotton test, when considering issues of excess
pain, the ALJ must evaluate whether the claimant (1)
produced objective medical evidence of an impairment;
and (2) show that the impairment could reasonably be
expected to produce some degree of the symptom. Id. at
1282 (citing Bunnel, 947 F.2d at 344)).

The claimant must produce evidence that the
"impairments could reasonably have cause some degree"
of pain. Smolen, 80 F.3d at 1283.  "Where objective
medical findings establish the existence of medical
impairment, but a claimant testifies that he or she
experiences pain at a higher level, the [ALJ] is free
to disbelieve that testimony." Magallanes v. Bowen, 881
F.2d 747, 755 (9th Cir. 1989).  The ALJ must, however,
make "a specific and justifiable finding that the
claimant's testimony is not credible." Id. (citation
omitted).

Here, the ALJ first properly evaluated whether
Plaintiff produced objective medical evidence of his
impairment and whether that impairment could reasonably
be expected to produce some degree of the symptom. AR
at 18-21.  Next, the ALJ assessed Plaintiff's

credibility and set forth several specific reasons why
he discredited Plaintiff's testimony regarding excess
pain. Id.

When considering Plaintiff's testimony and
statements concerning his impairment, the ALJ found
them to be disproportionate to the medical evidence in
the record. Id. at 21.  While an ALJ cannot deny
disability benefits solely because the degree of pain
alleged by the claimant is not supported by the
objective medical evidence, he or she can consider the
disproportionality along with other factors. See
Bunnell, 947 F.2d at 346.  The ALJ also evaluated
Plaintiff's level of activity, which can be considered
in addition to other probative evidence of a disability
or lack thereof. See Magallanes, 881 F.2d at 756.  The
ALJ took into account that Plaintiff was able to
perform all his activities of daily living and even
managed to attend college and obtain a degree after the
alleged date of the onset of his disability. AR at 21,
116-124, 132, 397.  The ALJ also noted that Plaintiff
admitted he cooks, sweeps, does his own laundry, and
needs no assistance in taking care of his personal

23

hygiene and grooming. AR at 21, 132.[8]

Although Plaintiff testified that he does not
care for his granddaughter, the ALJ recognized that
Plaintiff consistently told Dr. Ruhland that he did
care for his granddaughter. AR at 417, 21.  For
example, on July 6, 2004, Dr. Ruhland reported that
Plaintiff "continues to stay active caring for his
granddaughter two hours a day." AR at 21, 295.  Such
inconsistent testimony is another significant factor on
which the ALJ can discredit a claimant's allegations.
See Bunnell, 947 F.2d at 346.

Finally, the ALJ also relied on the two
Physical Residual Functional Capacity Assessments that
were completed on August 26, 2003, and November 11,
2003, by the State Agency physicians. AR at 19.  After
the physicians separately reviewed the evidence, they
each opined that Plaintiff could perform light work,
with restrictions limiting climbing, balancing,
stooping, kneeling, crouching, and crawling to only

---

[8]   The ALJ also noted that while not determinative,
it is significant that Plaintiff's work history shows
that he has not been employed since 1997, yet his
alleged onset of disability date is January 1, 2001.

occasional basis, and precluding the use of ropes, ladders, and scaffolds. AR at 19, 153-60, 233-40.  Both physicians also indicated that Plaintiff's allegations are not supported by the evidence in file, and that they believed Plaintiff's statements were not fully credible.[9]

The Court finds that the ALJ provided specific, clear, and convincing reasons as to why he discredited Plaintiff's testimony regarding his excess pain. <u>See Magallanes</u>, 881 F.2d at 755.  Accordingly, the Court finds that the ALJ's decision to discredit Plaintiff's testimony regarding his excess pain was supported by substantial evidence and free of legal error.

    C.   <u>The ALJ Did Not Err in Discounting the Treating Physician's Opinions When Evaluating Plaintiff's Residual Functional Capacity</u>.

The ALJ must give controlling weight to the opinion of a treating physician if the ALJ finds the opinion "well-supported by medically acceptable

---

[9]  In the August 26, 2003 assessment, the physician indicated that claimant's symptoms were not fully credible. AR at 158.  In the November 11, 2003 assessment, the physician indicated that "credibility is partial." AR at 238.

clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). If the ALJ decides not to give the opinion of a treating source controlling weight, the ALJ must consider factors such as the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source in determining what weight to give the opinion.  Id.

Opinions of non-examining physicians are generally given less weight than treating physicians. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995)(citation omitted).  If the ALJ rejects the opinion of a treating physician, he must provide specific and legitimate reasons that are supported by substantial evidence in the record. Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983).  The ALJ may properly reject a treating physician's opinion if it is not supported by the findings of any doctor. Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001).  In

26

addition, the ALJ may reject a treating physician's opinion that is "conclusory, brief, and unsupported by the record as a whole." <u>Batson v. Commissioner of Social Security Administration</u>, 359 F.3d 1190, 1195 (9th Cir. 2004) (citation omitted).

Plaintiff argues that the ALJ erred when he discounted Dr. Ruhland's statement on July 6, 2004 that "claimant is currently disabled" when evaluating Plaintiff's residual functional capacity ("RFC").[10] Plaintiff's Opening Brief at 19-21; AR at 21, 295. Plaintiff concedes that Dr. Ruhland's statement was conclusory and may not be entitled to controlling weight, but argues that Dr. Ruhland's opinion should not have been discounted because he specializes in pain management and had an ongoing relationship with Plaintiff. <u>Id.</u>  Defendant argues that the ALJ carefully took all the relevant medical evidence into account and resolved conflicts in the evidence appropriately.

---

[10]  "Residual functional capacity" is defined as the most an individual can still do after considering the effect of physical and/or mental limitations that affect the ability to perform work-related tasks. <u>See</u> 20 C.F.R. §§ 404.1545 and 416.945.

Defendant's Answering Brief at 15.

        The ALJ noted that Dr. Ruhland did not provide any debilitating medical signs or laboratory findings to support his conclusory opinion. AR at 21.  The ALJ also considered that there were only subjective medical signs of tenderness and range of motion, and Dr. Ruhland's reported laboratory findings were negative as to any cause of Plaintiff's claimed pain. <u>Id.</u>  In addition, the ALJ properly noted that statements that Plaintiff is "disabled" or "unable to work" do not mean that Plaintiff is disabled within the meaning of the Social Security Act. AR at 21. <u>See</u> 20 C.F.R. 404.1527(e)(2).  The ultimate decision of whether or not Plaintiff is disabled is left to the Commissioner. <u>Id</u>.

        The Court finds that the ALJ properly discounted Dr. Ruhland's conclusory statement that Plaintiff was disabled.  Accordingly, the Court finds that the ALJ's decision to discount Dr. Ruhland's statement was supported by substantial evidence and free of legal error.  Furthermore, the ALJ gave specific, legitimate reasons for discounting Dr.

28

Ruhland's statement and appropriately resolved

conflicts in the evidence. See Murray, 722

F.2d at 502; Magallanes, 881 F.2d at 750.

   D.   The ALJ Did Not Err in Determining that
        Plaintiff Could Return to His Past Relevant
        Work

          In order to be disabled within the meaning of

the Social Security Act, a claimant's impairment must

prevent him or her from returning to past relevant work

or making an adjustment to any other work.[11] 20 C.F.R. §

404.1520(f) and (g).  In order to determine whether a

claimant can return to his or her past relevant work,

the ALJ compares the RFC assessment made in step four

to the physical and mental demands of past relevant

work.  Id.  Plaintiff has the burden of proving that he

cannot perform past relevant work.  Sample v.

Schweiker, 694 F.2d 639, 643 (9th Cir. 1982).  If

Plaintiff meets his burden, "the burden shifts to the

Secretary to show 'that the claimant can engage in

other types of substantial gainful work that exists in

―――――――――――――――――

     [11]  "Past relevant work" is work that usually must
have been performed within the last fifteen years or
fifteen years prior to the date that disability must be
established. See 20 C.F.R. § 404.1565.

the [national] economy.'" Id. (citation omitted).

Plaintiff argues that the ALJ erred in relying on the VE's testimony when he determined that Plaintiff could return to his past relevant work as a landscape foreman. Plaintiff's Opening Brief at 21-22.  In particular, Plaintiff argues that Plaintiff's past relevant work as a landscape foreman is a composite job and doesn't fit into any DOT description.[12]  Plaintiff claims that his past work as a landscape foreman required *frequent* lifting of 20 pounds, which is not consistent with light work. Id. at 23; AR at 117. Defendant argues that the VE testified to evaluate Plaintiff's job as he performed it. Defendant's Answering Brief at 16-17.  Furthermore, Defendant maintains that Plaintiff admitted that his job as a

---

[12] A composite job has significant elements of two or more occupations and thus have no counterpart in the DOT. SSR 82-61(1982). Plaintiff points to the disparity between the vocational expert testimony.  At the first hearing on June 9, 2004, the vocational expert testified that Plaintiff's past relevant work included landscape foreman 408.161-010, which is skilled and heavy. AR at 399.  At the second hearing on March 23, 2005, the vocational expert testified that Plaintiff's past relevant work included landscape foreman 406.134-014, which is semiskilled and light. AR at 420.

landscape foreman was light work because he lifted no
more than twenty pounds. Id. at 17; AR 20-21; 117.

    The ALJ found that Plaintiff maintained the RFC
to perform light work, with restrictions limiting
climbing, balancing, stooping, kneeling, crouching, and
crawling to an occasional basis, and precluding the use
of ladders, ropes, and scaffolds. AR at 21.  Plaintiff
indicated that when working as a landscape foreman, he
occasionally lifted plants up to 20 pounds. Id. at 117.
The ALJ noted that Plaintiff's work as a landscape
foreman required him to "walk for two hours, stand for
two hours, sit for two hours, stoop for ½ hour, kneel
for ½ hour, crouch for ½ hour, and write, type, or
handle small object for ½ hour." Id. at 21-22.  The VE
testified that Plaintiff's particular job is identified
in the Dictionary of Occupational Titles ("DOT") as
semiskilled and light duty work. Id. at 420.  The ALJ
posed a hypothetical question to the VE regarding a
person with all the limitations of that of Plaintiff,[13]

---

[13]  The ALJ included the following restrictions in
his hypothetical, "full range of light work, no ropes,
ladders, scaffolding, occasional using ramps, stairs,
balance and stooping, kneeling, crouching and crawl."

and the VE evidently responded that according to the DOT description, Plaintiff could perform his previous work as a landscape foreman. AR at 421-22.  Because the ALJ properly limited the hypothetical and provided the VE with Plaintiff's restrictions as supported by the evidence, the ALJ did not err in relying on the VE's testimony that Plaintiff could return to his previous work as a landscape foreman.[14] See Magallanes, 881 F.2d at 756 ("[h]ypothetical questions posed to the vocational expert must set out *all* the limitations and restrictions of the particular claimant").

Accordingly, the Court finds that the ALJ's reliance on the VE's testimony was based on substantial evidence and was free of legal error.

## CONCLUSION

---

AR at 422.  It is proper for the ALJ to limit a hypothetical question to only those restrictions which are supported by substantial evidence in the record. See Magallanes, 881 F.2d at 756-57.

[14]  The transcript of the March 23, 2005 hearing before the ALJ is ambiguous due to certain inaudible portions of the recording. AR at 420-22.  However, there is no dispute between the parties for purposes of this case that the ALJ determined that Plaintiff could return to work.

Based on the foregoing, the Court finds that
the ALJ's determination that Plaintiff was not disabled
within the meaning of the Social Security Act was
supported by substantial evidence and that the ALJ
applied the proper legal standards.  Accordingly, the
Court FINDS and RECOMMENDS that the ALJ's decision be
AFFIRMED.

IT IS SO FOUND AND RECOMMENDED.

Dated:  Honolulu, Hawaii, September 10, 2007.



Kevin S.C. Chang
United States Magistrate Judge

CIVIL NO. 06-00371 HG-KSC; <u>DUANE K. AUWAE vs. JO ANNE B. BARNHART</u>; FINDINGS AND
RECOMMENDATION TO AFFIRM THE DECISION OF THE ADMINISTRATIVE LAW JUDGE